# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 53351

| | | |
|---|---|---|
| VIKTORIA V. DEVAI, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | Boise, April 2026 Term |
| | ) | |
| v. | ) | Opinion Filed: July 15, 2026 |
| | ) | |
| JOHN M. BURK, | ) | Melanie Gagnepain, Clerk |
| | ) | |
| Respondent. | ) | |

Appeal from the Magistrate Court of the First Judicial District of the State of Idaho, Kootenai County. Clark A. Peterson, Magistrate Judge.

The judgment of the magistrate court is <u>affirmed</u>.

Viktoria V. Devai, Appellant *pro se*, submitted argument on the briefs.

John M. Burk, Respondent *pro se*, submitted argument on the briefs.

———————————

MEYER, Justice.

This is an expedited, permissive appeal from a high-conflict custody modification dispute concerning the parties' minor child. Appellant Viktoria V. Devai and Respondent John M. Burk are the parents of a six-year-old child. After an eight-day trial, the magistrate court granted Burk's petition to modify custody in part, maintaining joint legal and physical custody and adopting a week-on, week-off schedule that increased Burk's parenting time.

We affirm the magistrate court's judgment because substantial and competent evidence supports its findings that no domestic violence, as defined by Idaho Code section 39-6303(1), occurred and that Burk did not abuse the child. In addition, the court did not abuse its discretion in evaluating the best-interest factors under Idaho Code section 32-717(1), in delegating limited school-selection authority, or in relying on the court-ordered parenting time evaluation.

## I. FACTUAL AND PROCEDURAL BACKGROUND

We note at the outset that the facts and record in this case are extensive. The 2025 memorandum decision and order is 223 pages and was issued following an eight-day court trial. Since the initiation of the modification proceedings, the parties have filed nine motions for

temporary custody orders, five of which were filed within the past year. The record contains numerous audio and video exhibits. Most of the parties' appellate briefing is devoted to recounting the disputed facts in the record, much of which reiterates positions previously advanced before the magistrate court. While we recognize the extensive background and intense emotion underlying this case, our opinion will address only the facts most relevant to the present appeal.

## A. The parties, their child, and the stipulated custody orders.

Devai and Burk are the parents of one child, born January 13, 2020 (the child). The parties met in 2017 in Bellingham, Washington. Devai moved in with Burk in the spring of 2018 and the two moved to Texas in October 2018. Conflict arose, and the couple separated and reunited several times. Devai became pregnant with the child in the summer of 2019. During the pregnancy, Burk discovered that Devai was still married to another man and was in the United States on a marriage visa. Devai described Burk as verbally, physically, and emotionally abusive and controlling early on in their relationship.

After the child's birth, Burk engaged in conduct he later acknowledged as inappropriate, including damaging property and making demeaning comments to Devai. While in Texas, Devai obtained a temporary civil protection order against Burk based on allegations of domestic violence. At the first contested hearing, the case was dismissed at her request, and no finding of domestic violence was made.

The parties then moved to Post Falls, Idaho, for a fresh start in May 2020. In early October 2020, Devai filed a petition for a civil protection order in Kootenai County, seeking protection from Burk for herself and the child. Devai alleged spousal rape and other domestic violence. The court entered an ex parte temporary civil protection order the same day, protecting Devai but not the child. That order resulted in Burk leaving the parties' shared apartment.

At the same time, Devai filed a petition for a decree establishing paternity and an order regarding child custody, visitation, and child support. She sought sole legal and physical custody of the child and an ex parte temporary order to the same effect. The court issued an ex parte order awarding Devai temporary sole physical custody of the child until a full hearing on the merits of the case could be heard.

Devai and Burk reached a settlement agreement regarding temporary custody before the scheduled hearing on the merits. Devai was awarded sole legal and physical custody of the child, who was ten months old, and Burk received one hour once a week supervised visitation, subject

to an increase based on supervisor feedback and "agreements reached between the parties through their attorneys." Pursuant to a term in the settlement agreement, the parties agreed that they would not modify the parenting plan before the child turned three years old. In addition, the court dismissed the civil protection order. However, in the temporary custody order, Burk was still ordered not to contact or come within 300 feet of Devai, her residence, or her employment. Burk was ordered to complete a domestic violence intervention program and a nurturing fathers parenting class.

Sometime after the temporary custody order was entered, Burk moved into the same apartment complex where Devai and the child resided. Devai's apartment unit was 101, and Burk's unit was 205. Burk maintained that the only available affordable housing option after months of waiting was in the same complex, but it was over 300 feet away from Devai's apartment, and he took "great steps" to avoid Devai.

When the child was one year and four months old, Devai and Burk entered a stipulated decree of paternity, custody, visitation, and support on May 18, 2021. That decree awarded joint legal and physical custody to both parties and gave Burk unsupervised visitation on alternate weekends, with no overnights. Because Burk had not completed a domestic violence intervention program or a nurturing fathers parenting class yet, those requirements remained in the decree. Burk completed a 52-week domestic violence intervention program in November 2021. He also subsequently completed the iCare Nurturing Father's program. In the summer of 2022, Devai moved to a new apartment complex in Spokane Valley, Washington.

In July, Burk filed a contempt action alleging Devai engaged in conduct at exchanges that violated the decree. Burk alleged that Devai would argue with him in front of the child, direct which activities were allowed during his visits, and demand explanations for what he planned to do during those visits.

The parties resolved the contempt action by stipulation, which resulted in the entry of an amended final judgment and decree on September 14, 2022. The child was two years and eight months old. The amended decree continued joint legal and physical custody, did not change the parenting time, but included provisions governing conduct at exchanges. The exchange provisions included:

> The parties shall not speak to one another at the parenting exchanges, except only as necessary to effectuate the exchange itself, and regarding no other parenting or non-parenting related matters. All other communication shall occur only through a

parenting app ([Our] Family Wizard, etc.) and the parenting app communication shall be related only to matters pertaining to the minor child.

. . . The parties may record during their parenting exchanges, but their phones or recording devices must be discrete [sic] and not held in front of the minor child or be obvious to the child, e.g. not holding the phone in front of the minor child's face.

**B. The modification petitions and the pre-trial proceedings.**

On January 20, 2023, immediately after the child turned three years old, Burk filed an amended petition to modify, which is the focus of this appeal. Burk alleged that a permanent, material, and substantial change in circumstance occurred, and he requested, among other things, that: (1) the court appoint a parenting time evaluator, (2) Devai submit to a mental health evaluation, (3) the court modify physical custody to "every Monday from 6:00 p.m. until Wednesday at 6:00 p.m. and every other Friday from 6:00 p.m. until Wednesday at 6:00 p.m.[,]" and annual alternating holidays.

Devai also filed a counterclaim alleging a change in circumstance, but she requested that "the current order remain in place with no changes" except that Burk's Wednesday visit be removed from the current parenting plan because he no longer visited the child on Wednesdays.

While the modification case was pending, Burk filed a motion for a parenting time evaluator, which the court granted. In addition, the court ordered an Idaho Department of Health and Welfare (IDHW) investigation in response to Devai's allegation that the child claimed that Burk had hit the child.

To defend himself against Devai's allegations of child abuse, Burk installed "Blink" home surveillance cameras throughout his home and recorded when the child was in his care. The system was motion-activated, recording whenever a motion sensor detected a person in a room. The cameras covered multiple areas of the home, including the child's bedroom, the kitchen, and other common areas. Burk also wore a body camera during custody exchanges.

The IDHW filed a report concerning Devai's report that Burk hit the child, concluding "[t]he department has no concerns for the safety of" the child. The court entered a temporary order in June 2023 that provided Burk one overnight visit "every other Tuesday from 6:00 p.m. until Wednesday at 6:00 p.m."

Devai subsequently filed an emergency motion for temporary custody based on her earlier allegation that Burk hit the child on the head. She also asserted new allegations against Burk for physical abuse of the child, and further claimed that he was "coaching, alienating, and causing

4

emotional and mental harm" to the child. To support her allegations that Burk was coaching the child and alienating their relationship, Devai described disparaging remarks from the child toward Devai, such as calling her "a fucking piece of shit," "disgusting," and "crazy." Devai claimed that the IDHW report contained false statements, that the caseworker lied in her report, and that the caseworker "disregarded" the court's order to investigate because she "never asked any questions to [the child] about . . . [Burk] hitting" the child. The court denied Devai's motion after the parenting time evaluator filed a report concluding that, although evidence of verbal and emotional abuse existed, primarily from Burk toward Devai, there was no evidence that Burk abused the child.

**C. The parenting time evaluation.**

The parenting time evaluator, Mary H. Hoffman, conducted intake and follow-up interviews with each parent, observed parent-child-family interactions, contacted third parties, and reviewed records. The evaluation stated that the methods and procedures conform to the Association of Family and Conciliation Courts (AFCC) Model Standards of Practice for Child Custody Evaluation and the 2022 AFCC Guidelines for Parenting Plan Evaluations. The evaluator noted that Devai and Burk maintained a contentious relationship characterized by allegations of domestic violence, child maltreatment, and persistent high conflict. Devai alleged that Burk had abused both her and the child, whereas Burk asserted that Devai was alienating the child from him and making false accusations of abuse.

The evaluator acknowledged that both parents demonstrated loving and attentive behavior toward the child, who appeared comfortable, happy, and engaged with each parent. Both households were assessed as safe and appropriate environments. Although Devai reported multiple instances of abuse and neglect by Burk, none were substantiated by investigating authorities, and Burk did not face criminal charges related to abuse. The parenting time evaluator noted that although Burk "has taken extreme measures to ensure his time with [the child] is documented and he can provide evidence of [the child's] safety in his home and with him, [Devai] continues to allege his abusive and dangerous behavior toward [the child]."

The parenting time evaluator characterized the ongoing conflict between Devai and Burk as marked by poor communication and limited cooperation. Both parents engaged in behaviors that perpetuated this conflict, including disputes over medical decisions, parenting styles, and childcare payments, all of which adversely affected the child. Both parents recorded custody

exchanges and there were mutual accusations of parental alienation and coaching the child. The child appeared well-adjusted in both homes but exhibited behavioral changes likely associated with parental conflict. The parenting time evaluator noted that continued exposure to the parents' conflict presented significant risks to the child's emotional well-being. As mentioned above, the parenting time evaluator concluded that, while evidence of verbal and emotional abuse existed, primarily from Burk toward Devai, there was no substantiated evidence of child abuse by Burk.

The parenting time evaluator recommended that the child primarily reside with Devai while maintaining substantial time with Burk under a shared physical custody arrangement. She recommended that exchanges should occur without direct parental contact, preferably at daycare or facilitated by a third party. The parenting time evaluator advised the court that both parents should complete co-parenting and communication programs and consider individual counseling. To facilitate communication, the evaluator recommended that the parties download a co-parenting app to communicate, such as OurFamilyWizard. Finally, the evaluator advised the court to appoint a parenting coordinator and order both parents to complete psychological evaluations.

Shortly after the parenting time evaluator's report was filed, the court ordered the parties to submit to psychological evaluations. Devai's evaluation concluded that she "presents in generally unremarkable terms, psychologically and emotionally." However, it noted that she has tendencies toward denial, tension, conformity, and defensiveness, with "Obsessive-Compulsive, histrionic, and mild narcissistic personality features or traits." Burk's evaluation noted that he did not have major psychiatric or personality disorders. He was diagnosed with an adjustment disorder with mixed anxiety and depressed mood, which was considered situational and likely to resolve when current stressors decrease, specifically "his custody situation[.]"

**D. IDHW investigations.**

Three IDHW investigation reports were admitted as evidence at trial. The first IDHW investigation followed Devai's allegation that the child told her that Burk "hit the minor child" in the summer of 2023. That investigation report concluded:

> [T]here have been no injuries that were not consistent with normal bumps and bruises for a child [that] age. There have been no injuries that indicated that [the child] has been abused. Even when [Devai] is provided a reasonable explanation for an injury on [the child], she will allege abuse. [Devai] believes that anyone who disagrees with her is an unreasonable person. [IDHW] does not have any concerns for [Burk's] ability to care for [the child].

The caseworker who completed the investigation stated that Devai "appears to make allegations that have no context and expects others to take her allegations as fact without any evidence," and recommended Devai obtain a psychological evaluation based on "concern that she may be struggling with mental health issues that impairs her ability to view the reality of the situation." Furthermore, the caseworker cautioned that "[t]he contentious coparenting relationship" negatively affects the child "and could potentially be hindering the parental bond" with Burk.

The second IDHW investigation report, filed in January 2024, noted that out of fourteen reports of abuse concerning the family since 2021, none had been substantiated. The caseworker who completed the investigation interviewed the child and Devai in the caseworker's office. She also interviewed the child and Burk in Burk's home on two occasions. The caseworker noted that Devai failed to follow up with law enforcement and to report abuse allegations in a timely manner. The investigation concluded that "[t]here have been no substantiated claims of abuse or neglect" and that "[t]he child appears to be safe and having her needs met." The second report further noted that Devai "appears to lack insight into how her thoughts about [Burk] and the ongoing custodial dispute impacts [the child]."

The third IDHW report was ordered after the fifth day of trial in response to Devai's introduction to the "Hotdog" video, discussed in more detail below. Devai did not cooperate with the investigation and did not bring the child in for an interview. Burk was prevented from bringing the child in after Devai obtained a temporary protection order in Washington. The report, completed without interviewing the child, stated that "there has been no evidence of abuse occurring at the hands of the father" and that the child appeared "clearly emotionally distraught" in a video provided to the IDHW. The caseworker recommended a parental fitness evaluation of both parents, counseling for both parents and the child, parenting classes, and psychoeducation regarding the impact of parental conflict on a young child.

### E. Other motions throughout the case.

Both parties filed motions for contempt against the other while their modification case was pending. Devai filed her motion against Burk over unpaid childcare costs. Burk responded with 42 counts of contempt against Devai for her conduct at exchanges and missed visits with the child. The court found Burk in contempt on two counts and Devai on 36 counts. At times, both parties represented themselves, though Devai later had a public defender represent her in the contempt

proceedings. Based on a request from both parties, the court did not impose sanctions against either Devai or Burk.

Devai repeatedly filed motions to disqualify Judge Clark Peterson before and during the trial. She alleged judicial misconduct, bias, and improper appointment of Kacey Wall as Guardian ad Litem (GAL) for the child based on Judge Peterson and Wall's "relationship as former business partners and colleagues." The court denied all Devai's motions for disqualification. On all motions, the court explained that Devai's allegations did not evidence bias or procedural error, and the court consistently reaffirmed its impartiality. The court also addressed Devai's concerns about the GAL appointment, explaining that any prior professional overlap with the GAL lasted approximately one to one and a half years, that they had no personal or social relationship outside of work, and that the appointment was appropriate given the limited number of qualified individuals.

## F. The eight-day trial and the related GAL appointment.

A bench trial began on February 2, 2025, and continued over eight nonconsecutive days, with the final day occurring in July 2025. On the fifth day of trial, Devai testified that on December 18, 2024, and January 6, 2025, the child disclosed that Burk had hit her. Devai introduced Exhibit 291, the "Hotdog" video, filmed on January 6, 2025. The video shows the child striking Devai and stating that Burk had instructed the child to harm the child's stuffed animal. To address concerns raised by the video, the court ordered the third IDHW investigation, appointed the GAL, and ordered Burk to preserve all surveillance videos from his home recording system covering the dates leading up to the disclosures. Devai also introduced Exhibit 303, the "name calling" video that recorded the child using profanity directed at Devai and stating that the child wanted to "kill" and "shoot" Devai.

While the trial was pending and the third IDHW investigation was ongoing, Devai obtained a temporary ex parte domestic violence protection order for her and the child in Washington. In her petition, Devai alleged that the child disclosed that during visits at Burk's house he "has pulled a gun on [the child] when [the child] 'cries for mommy.'" Following a UCCJEA[1] conference between Judge Marla L. Polin of the Superior Court of the State of Washington, County of Spokane, and Judge Peterson, the Washington court determined that it lacked personal jurisdiction over Burk, but it was appropriate to exercise temporary emergency jurisdiction for three weeks to

---

[1] UCCJEA is an acronym for the Uniform Child Custody Jurisdiction and Enforcement Act. It is codified at Idaho Code sections 32-11-101 to -405.

allow Devai the opportunity to seek the same relief in Idaho. At this time, Devai enrolled the child, who was five years old, at Liberty Creek Elementary in the Central Valley School District in Washington for the upcoming Fall 2025 school year.

The GAL filed an interim report in the middle of the trial explaining that after reviewing materials submitted by both parties, she was unable to provide the court with more assistance without further investigation. However, the GAL provided six recommendations pending her investigation. She recommended that first, exchanges should occur with an intermediary, such as a court-approved parenting time supervisor where one parent drops off the child and leaves, and the other parent picks up the child. Second, both parents must immediately message the off-duty parent about any incident causing a mark or injury to the child, including a description and photograph. The GAL should be emailed the same information. Third, the parents must not use corporal punishment to discipline the child. Fourth, they should avoid adult jokes or sarcasm the child may take literally, as the child may be sensitive to these statements and unable to distinguish them from genuine sentiment. Fifth, both must follow all advice from the child's medical providers, including for a skin condition. Finally, Devai must provide a list of the child's favorite foods, and Burk should try to keep the child's diet consistent with that list. Burk should temporarily document what the child eats to build trust.

On April 9, 2025, the court reinstated the previous temporary order regarding custody, denied competing motions for temporary custody, and adopted the GAL's recommendations one through five with minor modifications. It also ordered that while arrangements were made for an exchange supervisor, Devai's mother would handle the child's exchanges on Devai's behalf. However, in August, Devai's mother filed an affidavit criticizing Judge Peterson's continued assignment on the case and stating, among other concerns, that she would "not participate in the court-ordered sanctioned abuse of a child . . . ."

After conducting further investigation, the GAL filed her report on June 10, 2025. The GAL stated that Devai did not fully cooperate, whereas Burk was cooperative and provided extensive video and audio evidence of his time with the child. The GAL reviewed all relevant documents, recordings, and allegations, including claims that Burk hit the child with a Christmas star, failed to care for the child's eczema, and did not provide enough food. The evidence, including numerous videos of daily life, meals, and holiday activities, showed the child was comfortable, well cared for, and enjoyed a positive relationship with Burk. The GAL investigated allegations of

9

weight loss after visits with Burk, but after reviewing a log of what the child ate and watching videos of the child eating meals at Burk's home, concluded that the child's meals were appropriate, and the child appeared happy and healthy. The GAL stated that the child felt safe with both parents and did not exhibit fear or withdrawal toward Burk. The GAL stated that she was "unable to recommend a specific parenting schedule." However, she recommended joint legal and physical custody, meaningful time with both parents, shared decision-making, supervised exchanges, coordinated communication, and consistent monitoring of the child's weight.

The bench trial concluded on July 9, 2025, and the court took the matter under advisement.

## G. The magistrate court's memorandum decision, decree of modification, and other orders.

On August 12, 2025, the magistrate court issued a memorandum decision and order. The court identified a substantial, material, and permanent change of circumstances based on the child's increased age (then five and a half years old), the child would soon begin attending school, the escalation of conflict, and the child's distress. The court found that Devai's allegations of abuse of the child by Burk were not supported by the evidence. The IDHW investigations, the parenting time evaluation, and the GAL all concluded that the child was safe in Burk's care. The court found that Devai was the instigator of the conflict between the parties and that her conduct had caused the child distress. The court further found that the child's behavior showed turmoil and dysregulation in Devai's care that did not occur in Burk's care.

After analyzing each factor under Idaho Code section 32-717(1) and the presumption in favor of joint custody under Idaho Code section 32-717B, the magistrate court granted in part and denied in part Burk's amended petition to modify. The court continued the award of joint legal and physical custody and ordered a week-on, week-off custody schedule. The court appointed a parenting coordinator and an exchange supervisor and ordered counseling for the child and for both parents. The court further declared that Devai's enrollment of the child in school during the pendency of a temporary protection order was not binding, and the court provided a process for school selection.

Devai filed a motion for permissive appeal, which this Court granted on an expedited timeline.

## II. ISSUES PRESENTED ON APPEAL

1. Whether the magistrate court abused its discretion by failing to give sufficient weight to the domestic violence and child abuse factors under Idaho Code sections 32-717 and 39-6303.

10

2. Whether the magistrate court abused its discretion by authorizing Burk to select a school within his or Devai's home district if the parties could not agree on a school by a specified date.

3. Whether the magistrate court abused its discretion by relying on the parenting time evaluation.

### III. STANDARDS OF REVIEW

Child custody determinations fall within the sound discretion of the magistrate court. *Raber v. Raber*, 175 Idaho 365, ___, 565 P.3d 808, 811 (2025). Under the abuse of discretion standard, this Court asks whether the magistrate court: "(1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason." *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). This Court will not overturn child custody determinations by the trial court absent an abuse of discretion. *Raber*, 175 Idaho at ___, 565 P.3d at 811. In child custody matters, "abuse of the trial court's discretion occurs only when the evidence is insufficient to support the conclusion that the interests and welfare of the minor children would be best served by a particular custody award or modification." *Id.* (alteration omitted) (quoting *Biggers v. Biggers*, 103 Idaho 550, 555, 650 P.2d 692, 697 (1982)).

### IV. ANALYSIS

Devai appeals from the magistrate court's memorandum decision and order and the decree of modification. She requests reversal of the magistrate court's judgment, protective orders for the child, a remand of the case, and removal of the assigned magistrate judge.

**A. Devai waived the issue of judicial bias on appeal.**

As a preliminary matter, Devai's appellate brief contains numerous allegations of bias, evidence tampering, and retaliation by the magistrate judge against her. Burk responded to these claims as a distinct issue raised on appeal.

Rule 35 of the Idaho Appellate Rules requires "[a] list of the issues presented on appeal, expressed in the terms and circumstances of the case but without unnecessary detail. The statement of the issues should be short and concise, and should not be repetitious." I.A.R. 35(a)(4). In addition, even when "an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court." *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d

1146, 1152 (2010); *see also* I.A.R. 35(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented on appeal, the reasons therefor, with citations to the authorities, statutes and parts of the transcript and record relied upon.").

"Where an appellant fails to assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by [this] Court." *Bach*, 148 Idaho at 790, 229 P.3d at 1152 (citing *Randall v. Ganz*, 96 Idaho 785, 788, 537 P.2d 65, 68 (1975)). A "general attack" on the trial court's findings and conclusions "without specific reference to evidentiary or legal errors, is insufficient to preserve an issue." *Id.* "This Court will not search the record on appeal for error." *Id.* "Consequently, to the extent that an assignment of error is not argued and supported in compliance with the [Idaho Appellate Rules], it is deemed to be waived." *Id.*

"This Court has repeatedly held that pro se litigants are held to the same standards and rules as those litigants represented by an attorney." *Fed. Home Loan Mortg. Corp. v. Butcher*, 157 Idaho 577, 580, 338 P.3d 556, 556 (2014) (quoting *Clark v. Cry Baby Foods, LLC*, 155 Idaho 182, 185, 307 P.3d 1208, 1211 (2013)). "Pro se litigants, like all other litigants, must comply with the Idaho Appellate Rules and standards of appellate practice." *Id.*

Devai's statement of issues presented does not identify judicial bias, retaliation, evidence tampering, or refusal to disqualify as issues presented on appeal. Nevertheless, her brief contains multiple allegations of bias. In the statement of the case, she asserts that her "appeal arises from conduct that shocks the conscience, including abuses of judicial authority, obstruction of justice, and the deliberate tampering and doctoring of facts to manufacture an outcome through retaliatory harm and malicious injury after an intolerable appearance of bias was raised to produce a favorabl[e] outcome for [Burk]." She further alleges that she "testified before the Idaho State Legislature regarding the abuses in this case and has gathered additional victims of the same magistrate, resulting in the Idaho Supreme Court granting investigation into the conduct of the presiding judge . . . ." In her recitation of the procedural history, Devai contends that the magistrate judge engaged in "obstructing justice, tampering and doctoring of the evidence and the record to produce favorable outcome for [Burk] in a continuum patter [sic] of retaliatory harm and appearance of bias . . . ."

These allegations are not supported by citations to the record, cogent argument, or legal authority. Rather, they are unsupported *ad hominem* attacks based solely on the magistrate court's

rulings that are adverse to Devai. In addition to failing to identify specific conduct as grounds for judicial bias, retaliation, evidence tampering, or failure to disqualify as a discrete issue on appeal, Devai failed to provide a legal analysis section of her brief to the issue from which we could divine that this was an issue Devai intended to present on appeal. *See Beebe v. N. Idaho Day Surgery, LLC*, 171 Idaho 779, 789, 526 P.3d 650, 660 (2023) (holding that I.A.R. 35(a)(4) "might be relaxed where the issue was addressed by authorities cited or arguments contained in the briefs").

The magistrate court addressed Devai's bias claims on several occasions and disclaimed having any bias toward either party. For example, at the January 16, 2025, hearing on Devai's motion to disqualify, the magistrate judge explained that he did not have a bias or prejudice for or against either party, that rulings are "simply incident to the [c]ourt's job of making rulings" and do not constitute bias, and that citizen complaints to judicial offices do not mandate disqualification. The magistrate court addressed similar contentions at the January 30, 2025, hearing on Devai's motion to continue trial; the March 14, 2025, UCCJEA conference; the March 28, 2025, hearing on Devai's third motion to disqualify; the May 22, 2025, hearing on her motion for reconsideration; and the September 12, 2025, hearing on her motion for stay and recusal.

Devai's opening brief does not reference these rulings in the clerk's record, cite the relevant portions of the reporter's transcript, or analyze how the magistrate court abused its discretion in making those decisions. In addition, Devai does not cite the Idaho Code, Rule 109 of the Idaho Rules of Family Law Procedure governing disqualification, or any authority on the standard of review for judicial recusal or disqualification.

As a result, Devai has waived the issue on appeal, and her unsupported allegations of bias, evidence tampering, and retaliation by the magistrate court will not be addressed further.

## B. The magistrate court did not abuse its discretion in modifying custody to increase Burk's parenting time.

Devai asserts that the magistrate court abused its discretion by determining that no domestic violence or child abuse by Burk occurred, which, according to her, led the court to bypass the statutory factors outlined in Idaho Code sections 32-717(1) and 39-6303. She references Exhibit 36, a video recording of Burk's conduct toward her around the time of the child's birth, as well as photographs of bruising, property damage to a coffee table and door, and a temporary civil protection order obtained in Texas. Devai further argues that Burk's completion of a 52-week domestic violence intervention program and the conditions imposed by the November 2020 temporary order corroborate the occurrence of domestic violence. In addition, she maintains that

13

the child's therapist contacted IDHW's Division of Child and Family Services (CFS) on five occasions, as documented in Exhibit 228, and contends that the court relied on unfounded IDHW investigations, failed to consider the child's disclosures, weight loss data, and testimony regarding starvation, and that the finding identifying her as the instigator of conflict was contrary to the weight of the evidence.

Burk responds that the magistrate court's findings are supported by substantial and competent evidence and that no abuse of discretion occurred. He asserts that the court considered the statutory factors and the evidence of domestic violence under Idaho Code section 32-717 but concluded that the evidence did not meet the statutory definition of domestic violence under Idaho Code section 39-6303. He further emphasizes that the magistrate court distinguished between historical intimate partner violence, reactive aggression, and statutory domestic violence; that three IDHW investigations concluded that the abuse claims were unfounded; that both the parenting time evaluator and the GAL reviewed in-home camera footage and reported no evidence of abuse; that both parties stipulated to joint legal and physical custody in 2021 and 2022; and that the presumption under Idaho Code section 32-717B remained unrebutted.

A party seeking to modify an existing custody order must first demonstrate that a material and substantial change in circumstances has occurred since the prior order. *Lamont v. Lamont*, 158 Idaho 353, 359, 347 P.3d 645, 651 (2015) (quoting *Suter v. Biggers*, 157 Idaho 542, 546, 337 P.3d 1271, 1275 (2014)). Upon such a showing, the court determines custody and residence based on the best interests of the child standard set forth in Idaho Code section 32-717. *Id.* The court must consider not only material, permanent, and substantial changes in conditions or circumstances, but must also thoroughly examine the implications of any evident change with respect to the best interests of the child. *Woods v. Woods*, 163 Idaho 904, 907, 422 P.3d 1110, 1113 (2018) (citation omitted). Even minor or seemingly insignificant changes in circumstances may significantly affect children. *Id.* (citation omitted). The best interests of the child remain "the controlling consideration in all custody proceedings." *Id.*

Idaho Code section 32-717(1) directs the court to consider all relevant factors, including the wishes of the parents and the child, the interaction between the child and the parents, the child's adjustment to home, school, and community, the character and circumstances of the parties, the need to promote continuity and stability, and domestic violence as defined in Idaho Code section

39-6303. I.C. § 32-717(1). This list is neither exhaustive nor mandatory, as the court may consider other relevant factors. *Lamont*, 158 Idaho at 359, 347 P.3d at 651 (citation omitted).

Idaho Code section 32-717B establishes "a presumption that joint custody is in the best interests of a minor child[,]" unless a preponderance of the evidence demonstrates otherwise. I.C. § 32-717B(4). The statute also provides for a presumption that joint custody is not in the best interest of the child if one parent is found "to be a habitual perpetrator of domestic violence as defined in section 39-6303." I.C. § 32-717B(5); *see Lamont*, 158 Idaho at 360, 347 P.3d at 652. Idaho Code section 39-6303 defines "domestic violence" as "the physical injury, sexual abuse or forced imprisonment or threat thereof of a family or household member, or of a minor child by a person with whom the minor child has had or is having a dating relationship, or of an adult by a person with whom the adult has had or is having a dating relationship." I.C. § 39-6303(1).

Both parties filed petitions to modify, each alleging that a material, permanent, and substantial change in circumstances had occurred. After an eight-day trial on custody modification, the magistrate court determined that since the amended decree dated September 14, 2022, the parties' ongoing conflict, failure to co-parent, the impact of that conflict on the child, and changes in income warranted modification. The child's age and transition toward school age provided additional grounds for modification.

To assess the parties' differing custody requests, the court applied the statutory definition of domestic violence under Idaho Code section 39-6303. In doing so, the court distinguished domestic violence from historical intimate partner violence or reactive aggression. The court acknowledged that

> [t]here was a period of intimate partner violence and/or reactive aggression that has been addressed and Mr. Burk has done Batterer's Intervention (a 52-week program) and the iCare Nurturing Father's program to address any concerns. Such conduct is also historical and not current, significantly predating the most recent orders and multiple stipulations to joint legal and physical custody.

The court further concluded that Devai did not present "any evidence of domestic violence as defined by Idaho law." The court's analysis aligns with Idaho Code section 39-6303(1).

Verbal mistreatment, name-calling, intimidation, and damaging property are all forms of conduct that domestic violence advocates, counselors, and treatment providers identify as intimate partner violence. However, the legislature has provided a specific statutory definition of "domestic violence" for purposes of Idaho Code section 32-717(1)(g). Devai's argument that conduct beyond "physical injury, sexual abuse, and forced imprisonment or threats thereof" should be considered

15

"domestic violence" is, in substance, a request to expand the definition the legislature enacted. Such a request is for the legislature to consider, not for this Court.

Because Devai failed to establish evidence that Burk engaged in domestic violence as defined in section 39-6303, the magistrate court did not err when it declined to apply the presumption against joint custody identified in section 32-717B(5).

### 1. *Substantial and competent evidence supports the magistrate court's findings.*

Substantial and competent evidence supports the magistrate court's determination that Burk is not a habitual perpetrator of domestic violence and has not abused the child. Findings of fact supported by substantial and competent evidence are not clearly erroneous, even when conflicting evidence exists in the record. *Woods*, 163 Idaho at 907, 422 P.3d at 1113. "Substantial and competent evidence is relevant evidence which a reasonable mind might accept to support a conclusion." *Id.* (quoting *Hull v. Giesler*, 163 Idaho 247, 250, 409 P.3d 827, 830 (2018)). "Substantial evidence is more than a scintilla of proof, but less than a preponderance." *Stephens v. Buell*, 175 Idaho 574, ___, 568 P.3d 471, 482 (2025) (quoting *Ehrlich v. DelRay Maughan, M.D., P.L.L.C.*, 165 Idaho 80, 83, 438 P.3d 777, 780 (2019)).

Three IDHW investigations found Devai's abuse allegations to be unfounded. The first report noted that Devai "appears to make allegations that have no context and expects others to take her allegations as fact without any evidence." The IDHW caseworker further observed that Devai "believes that anyone who disagrees with her is an unreasonable person." The third report concluded that "based on the knowledge of this worker from review of previous records and information obtained from collaterals there has been no evidence of abuse occurring at the hands of the father." The IDHW caseworker testified that none of the fourteen reports received since 2021 had been substantiated.

Both the GAL and the IDHW caseworker reviewed extensive in-home camera footage from Burk's residence and found no evidence of child abuse. The magistrate court found that "[n]o reviewing agency, not law enforcement, not [IDHW], and not the GAL, who have reviewed the home video provided to them by Mr. Burk has found any evidence of problems in Mr. Burk's home, nor have they stated that relevant video was missing or that there were gaps." The GAL concluded after reviewing "extremely voluminous videos and audio recordings" that all the recordings "show a [c]hild who is comfortable and feels safe with [Burk]," that the child "enjoys their time together," and that the child "is not withdrawn, shy or acting out in his care." The GAL

16

stated that "there is almost no time that [Burk] is with [the child] that is not recorded in Burk's home surveillance footage while the child was in his care and no evidence of the events Devai alleged.

The magistrate court found Devai's testimony to lack credibility. As the finder of fact, the court explained that "her views are not reality-oriented. She refuses to consider actual evidence and findings." The court further determined that "Devai reports injuries no one else is seeing, which indicates a lack of credibility." The court adopted Burk's version of events "when testimony differs." These credibility determinations are entitled to deference on appeal. *Stephens*, 175 Idaho at ___, 568 P.3d at 486; *see also Bickerstaff v. Bickerstaff*, ___ Idaho ___, ___, 589 P.3d 551, 567 (2026) (explaining that the Court defers "to the trial court's unique ability to accurately weigh the evidence and judge the demeanor of the witnesses").

Multiple civil protection orders sought by Devai were dismissed by her at the first contested hearing, meaning Burk never had an opportunity to tell his side of the story and a court never made a finding that domestic violence occurred. The magistrate court noted that "[t]his is the first of many instances where Ms. Devai utilizes temporary protection orders but has them dismissed at the first contested hearing." Ex parte temporary orders entered on an unrebutted petition and later dismissed without findings do not establish, as Devai contends, habitual domestic violence. The court further noted that the November 2020 "stipulation did not include any finding of domestic violence and any hearing at which such a finding could be made [was] dismissed by Ms. Devai."

*2. Devai's specific evidentiary contentions do not undermine the magistrate court's findings.*

The court considered Exhibit 36, a recording from November 17, 2019, which predates the child's birth on January 13, 2020. The court characterized Burk's comments in the recording as "horrible" and "entirely unacceptable." The court adopted Burk's testimony "related to the comments therein from November of 2019" and found: "[i]t also appears true that there was hostility and reactive aggression by Mr. Burk towards Ms. Devai following [the child's] birth, all of this is historical and predates even the first Decree. There is no evidence he says such things currently or for some time." (Italics omitted.) The exhibit documents verbal mistreatment from a period preceding the parties' stipulations to joint custody but does not establish the conduct in the definition of domestic violence in Idaho Code section 39-6306: physical injury, sexual abuse, or forced imprisonment.

The magistrate court reviewed Exhibit 35, a photograph showing what appears to be a bruise on Devai's arm, and found that

> there is no credible evidence that the alleged bruises in that photo were caused by Mr. Burk. The matter was not reported or investigated. No charges were filed. Mr. Burk denies he is the cause of the apparent injuries and indicates Ms. Devai sent him that picture in an email and that it may relate to alleged abuse by another person.

Burk admitted to damaging a coffee table, a door, and a suitcase and explained the circumstances. The court found this conduct "grossly inappropriate," but reasoned that "it is not domestic violence . . . , this evidence is historical, predating even the first Decree, predating Mr. Burk attending treatment, and predating the parties twice agreeing to joint custody and that each party is a fit and proper parent." (Italics omitted.) Property damage, even when committed during an emotional confrontation, does not fall within the statutory definition of domestic violence under Idaho Code section 39-6303(1).

Devai applied for, and was granted, an ex parte temporary civil protection order in Texas alleging domestic violence by Burk. The temporary order was dismissed at her request at the first contested hearing; no findings of domestic violence were entered. An ex parte temporary order entered on an unrebutted petition and later dismissed without findings does not constitute proof of habitual domestic violence.

Burk completed the 52-week domestic violence intervention program and the iCare Nurturing Father's program in connection with the resolution of a temporary protection order matter. The court explained that "Burk disagreed that he needed those programs but entered into the resolution on advice of counsel." The court also found that the stipulation "did not include any finding of domestic violence and any hearing at which such a finding could be made [was] dismissed by Ms. Devai."

The magistrate court considered the play therapy notes of Kellie Anderson and the referrals Anderson made to CFS. The court found that Devai unilaterally enrolled the child in counseling, that Devai "tried to present her version of things" to the therapist, and that Devai terminated counseling once the therapist made positive observations of Burk's interactions with the child. The CFS investigations resulting from the referrals did not substantiate abuse.

Devai contends that the magistrate court failed to consider the child's disclosures, weight loss data, and testimony regarding starvation claims. The record refutes this contention. The third IDHW report addressed the weight issue, stating that the nurse who reviewed the child's medical

18

records reported that "Devai was worried about [the child] losing weight when [the child] was at [Burk's] house. However, [the child] had gained weight and is on an appropriate curve for [the child's] weight and age." That report further noted:

> [The child's] medical records reported Dr. Moon has not seen injuries on [the child]. However, Ms. Devai has expressed concerns for [the child] while at [Burk's] house. Dr. Moon sent in a referral for [the child] to be seen at Partners for Children and Families in Spokane, Washington. Partners is Washington's child advocacy center where forensic medical exams and interviews are completed. [The child] has made no disclosures about any physical abuse to Dr. Moon.

The GAL investigated the Christmas star allegation and reported, after reviewing the audio of the tree-decorating session at Burk's apartment, that "[t]here was no break in the recording." The GAL did not view any incident where Burk hit the child after reviewing Burk's home surveillance footage.

The magistrate court found that Devai is the primary instigator of the ongoing conflict, based on testimony, the IDHW's reports, and the court's observations. The court explained that "[w]hile both parties play a role in the present situation, the court finds [IDHW] is correct in assessing that Ms. Devai is the primary instigator of this conflict. Ms. Devai continues to make repeated, unsubstantiated allegations that Mr. Burk is abusing [the child]." This finding is supported by the same evidence that underpins the determination that no domestic violence or child abuse occurred, including the three IDHW reports, the parenting time evaluation, the GAL report, and the court's credibility assessment based on its observation of the witnesses during the trial. This Court does not reweigh these determinations. *Stephens*, 175 Idaho at ___, 568 P.3d at 482–83.

The magistrate court's memorandum decision and order demonstrates a reasoned exercise of discretion. The court framed the dispute as two competing factual narratives, stating that "one of the two possibilities is clearly and overwhelmingly supported by the evidence and the other is not." The court made findings consistent with three IDHW investigations, the parenting time evaluator, and the GAL. The court's findings were also based on the testimony and other evidence presented at the trial. The court considered each factor under Idaho Code section 32-717, thoroughly explained its reasoning under each factor, and concluded that "the [Idaho Code section] 32-717 factors strongly favor Mr. Burk's proposal over Ms. Devai's proposal as being in [the child's] best interests."

19

To the extent Devai contends that the court should have credited her allegations over the testimony and evidence, including conclusions of the three IDHW investigations, the parenting time evaluator, and the GAL, the argument requests this Court to substitute its judgment for that of the magistrate court on matters of credibility and weight. This is not the function of an appellate court. *Stephens*, 175 Idaho at ___, 568 P.3d at 482–83; *see also Bickerstaff*, ___ Idaho at ___, 589 P.3d at 566–67 (explaining that this Court is "precluded from substituting our judgment for that of the fact finder as to the credibility of witnesses, the weight of testimony and the reasonable inferences to be drawn from the evidence" (citation omitted)).

In summary, substantial and competent evidence supports the magistrate court's findings of fact that domestic violence, as defined by Idaho Code section 39-6303, was not present and that Burk did not abuse the child. The magistrate court did not abuse its discretion in modifying custody to increase Burk's parenting time.

## C. The magistrate court did not abuse its discretion in authorizing Burk to select a school within his or Devai's home district if the parties could not agree by a specified date.

The magistrate court determined that Devai's enrollment of the child in school during the pendency of a Washington temporary protection order was not binding. Relevant to the child's school, the memorandum decision and order provided:

> 41. The parties shall discuss and agree on where [the child] will attend school. If they cannot agree, the parties may also submit the question to the Parenting Coordinator who is empowered to select a school for [the child].

> 42. If the matter has not been resolved between the parties by September 1, 2025, Mr. Burk is authorized to select a school for [the child] that is either within his home district or within Ms. Devai's home district so that [the child] may begin school. Mr. Burk is authorized to complete any and all enrollment paperwork. The matter will then be referred to the Parenting Coordinator, once engaged, for final resolution.

> 43. Ms. Devai's recent unilateral enrollment of [the child] during the term of the temporary protection order is not binding.

> 44. If the Parenting Coordinator determines either party is refusing to engage in or obstructs the process regrading [sic] [the child's] school and educational matters, the Parenting Coordinator may recommend the other party be designated as authorized to have final decision-making authority as to school and educational matters, including school selection, and that party is further authorized to enroll [the child] as directed by the Parenting Coordinator.

On appeal, Devai asserts that paragraph 42 of the memorandum decision and order lacks sufficient reasoning. She further alleges that the removal of the child from the child's primary

residential community in Spokane Valley constitutes retaliation. Devai maintains that Liberty Creek Elementary is located near the child's residence and along Burk's work commute, that neither parent would experience hardship, and that the order imposed a two-hour commute for the child. In response, Burk contends that no established school placement existed at the time of trial, that Devai's enrollment of the child at Liberty Creek Elementary in March 2025 was unilateral and contrary to the parties' joint legal custody, and that the order implements a graduated process prioritizing the child's continuity and stability.

Idaho Code section 32-717B(3) defines "joint legal custody" as "share[d] . . . decision-making" concerning the health, education, and general welfare of the child. I.C. § 32-717B(3). In *Hess v. Hess*, this Court explained that awarding joint legal custody while simultaneously granting one parent "final decision-making authority on all issues relat[ed] to the children" constituted an abuse of discretion because that award "is the opposite of" joint legal custody and shared decision-making. 174 Idaho 524, 539–40, 558 P.3d 254, 269–70 (2024). By contrast, in *Bickerstaff*, we explained that a magistrate court's decision to delegate school selection to one parent following relocation did not conflict with *Hess*. ___ Idaho at ___, 589 P.3d at 578. We reasoned that

> [u]nlike the order at issue in *Hess*, the magistrate court's order in this case did not give [the mother] sole decision-making authority on all matters concerning the health, education, and general welfare of the children. To the contrary, the only decision the court delegated solely to [the mother] was the initial selection of the school the parties' children would attend upon relocation. Our cases make clear that this limited delegation of decision-making authority is permissible, as long as there is an evidentiary basis to support it.

*Id.*

Devai and Burk were awarded joint legal and physical custody by stipulation long before the decree of modification at issue on appeal was entered. Unlike the parent in *Hess*, who was granted final decision-making authority on all issues, Burk was granted only limited authority to decide the child's initial school enrollment *if* the parties could not agree. The court implemented a four-step process: (1) the parties must attempt to reach agreement; (2) if unsuccessful, the matter may be submitted to the parenting coordinator; (3) if unresolved by a specific date, Burk was authorized to select a school within either party's home district; and (4) the parenting coordinator was to make a final resolution, including the authority to reassign school decision-making. The court explained that setting a specific date certain was necessary because the child was "not yet in school, so neither [parenting] plan will be disruptive of an established school." The court also

reasoned that "Devai removed [the child] from [the child's] preschool program and . . . counselor, which undermines continuity or stability. The court, or in this case the parties or the [p]arenting [c]oordinator, have flexibility in determining issues related to school as there is no established program."

When determining what is the best interest of the child, Idaho Code section 32-717(1)(d) directs the court to consider "[t]he child's adjustment to his or her home, school, and community[,]" and section 32-717(1)(f) directs consideration of "[t]he need to promote continuity and stability in the life of the child[.]" I.C. § 32-717(1)(d), (f). The court applied those factors and explained that because the child had been removed unilaterally from preschool and counseling, it could not treat any one school as the settled placement. The court further found that the child "has lived in the Spokane-Coeur d'Alene metropolitan area for the majority of [the child's] young life. Under either plan, that is maintained."

Paragraph 43 states: "Devai's recent unilateral enrollment of [the child] during the term of the temporary protection order is not binding." That determination is supported by three findings of fact in the record. First, the parties have held joint legal custody under the 2021 decree and the 2022 amended decree. A unilateral enrollment by one parent in the absence of an agreement, a court order, or a modification of joint legal custody is inconsistent with the statutory shared decision-making standard. The magistrate court found that Devai's enrollment of the child at Liberty Creek Elementary in March 2025 was unilateral and without Burk's consent.

Second, Devai enrolled the child in Liberty Creek Elementary after she obtained the temporary protection order in Washington by raising allegations "that had either been previously litigated [in Idaho] and denied or found unsubstantiated, or that were currently pending in trial before [the Idaho magistrate] court." Following a UCCJEA conference, Idaho retained continuing exclusive jurisdiction, and the Washington temporary order was dismissed. Moreover, the Washington court declined to renew the prior anti-harassment order because Burk did "not engage[] in harassment" and because Devai "continue[d] to engage in harassing behavior toward [Burk]."

Third, the court found a pattern of Devai removing the child unilaterally from settings that supported the child's continuity and stability. The court found Devai unilaterally removed the child from the Spokane Child Development Center daycare "once the court modified exchanges to be at the daycare where only one parent would be present." The court found Devai unilaterally removed

22

the child from play therapy with Anderson "upon learning that Ms. Anderson . . . had done an observation of [the child] in Mr. Burk's home and had made positive comments."

Substantial and competent evidence supports the findings that the child was not enrolled in an established school at the time of trial, that Devai's enrollment of the child at Liberty Creek Elementary was unilateral, and that the best-interest factors did not require the selection of any specific school. Burk testified that Devai enrolled the child for the upcoming school year "behind [his] back." The parenting time evaluator referenced the child's prior attendance at the Spokane Child Development Center but did not identify any current school enrollment. The third IDHW report and the GAL did not identify any school enrollment.

Again, this Court does not reweigh evidence on appeal. *Stephens*, 175 Idaho at ___, 568 P.3d at 482–83. Devai's factual contentions on appeal that the "minor child was not recently enrolled," and that Liberty Creek Elementary was "along [Burk's] daily commute," depend on credibility judgments and on facts not developed in the trial record. The magistrate court found that the child was not in an established placement and that Devai's enrollment was unilateral. Those findings are supported by substantial and competent evidence and will not be disturbed on appeal.

The magistrate court treated the school selection issue as a matter of discretion, operated within the outer boundaries of that discretion, applied the correct legal standards under Idaho Code sections 32-717(1) and 32-717B(3), and based its decision on reasoned analysis. The graduated process outlined in paragraphs 41 through 44 constitutes a limited delegation of school selection authority, consistent with this Court's decision in *Bickerstaff*. The conclusion that Devai's unilateral enrollment is "not binding" is supported by the joint legal custody award, the expiration of the Washington protection order during which the enrollment occurred, and the documented pattern of unilateral removals by Devai. The magistrate court did not abuse its discretion.

## D. The magistrate court did not abuse its discretion by relying on the parenting time evaluation.

Devai argues that the magistrate court abused its discretion by relying on a parenting time evaluation she considers faulty. She presents two main arguments. First, she alleges that the evaluator was biased because she did not contact other people ("collateral contacts") identified by Devai, such as her mother and medical providers, who could have verified or supplemented the history of the child and the parents. Second, she contends that her expert witness, Dr. Kathy J. Edwards, identified areas of concern with the evaluation. Burk maintains that the evaluation

23

complied with the Idaho Rules of Family Law Procedure and professional standards, and that the magistrate court considered the evaluation alongside other evidence.

Devai's challenge is unpersuasive for three reasons. First, the magistrate court appointed a neutral evaluator. Second, the evaluation complied with Rule 1004 of the Idaho Rules of Family Law Procedure. Third, the court reached its decision through reasoned analysis in assigning weight to the evaluation. Each reason is addressed in turn.

A parenting time evaluation is "an expert investigation and analysis" conducted to determine a child's best interests in cases involving disputed parenting time. I.R.F.L.P. 1004(a). Its purpose is to provide the court with information necessary for custody and parenting-time decisions that serve the child's best interests, including assessments of parental capacity and the child's developmental, emotional, and physical needs. *Id.*

### 1. *The magistrate court appointed a neutral evaluator.*

The court "may order a parenting time evaluation in any action involving custody of [a] minor child to assist the trier of fact with matters that affect the best interest of the child." I.R.F.L.P. 1004(b); *see Kelly v. Kelly*, 165 Idaho 716, 724, 451 P.3d 429, 437 (2019) (quoting former I.R.F.L.P. 719(B), now I.R.F.L.P. 1004(b)). "The court may permit the parties to select an evaluator, or . . . may appoint" one. I.R.F.L.P. 1004(c). "In either case, the chosen expert must be neutral, and not beholden to either side." *Kelly*, 165 Idaho at 726, 451 P.3d at 439. The appointed evaluator must meet established qualifications. I.R.F.L.P. 1004(c), (d). "If the court intends to appoint its own evaluator, it must follow the show cause procedure set forth in Idaho Rule of Evidence 706." I.R.F.L.P. 1004(c); *see Kelly*, 165 Idaho at 724, 451 P.3d at 437 (quoting former I.R.F.LP. 719(c), now I.R.F.L.P. 1004(c)). Idaho Rule of Evidence 706 provides,

> [T]he court may order the parties to show cause why expert witnesses should not be appointed and may ask the parties to submit nominations. The court may appoint any expert that the parties agree on and any of its own choosing. But the court may only appoint someone who consents to act.

I.R.E. 706(a).

Devai relies on *Kelly* to argue that the magistrate court abused its discretion by relying on the evaluation "despite ethical and neutrality concerns." Her reliance is misplaced. In *Kelly*, the husband retained an expert for $5,000 to review materials concerning whether the wife was engaging in parental alienation. 165 Idaho at 721, 726–27, 451 P.3d at 434, 439–40. After the expert reported that she could not form an opinion from those materials and recommended that the

court consider a parenting time evaluation, the husband moved to appoint her as the court's evaluator or, in the alternative, as his own expert. *Id.* at 721, 451 P.3d at 434. The magistrate court declined to appoint her as the court's evaluator but permitted the husband to hire her as his expert to conduct the evaluation. *Id.*

On appeal, this Court held that the magistrate court abused its discretion because a parenting time evaluator "must be neutral, in the sense that the parties *jointly* select the evaluator, or the court *appoints* a neutral evaluator" to assist the trier of fact with matters affecting the child's best interests. *Id.* at 725, 451 P.3d at 438. We recognized that magistrate courts benefit significantly from qualified experts who can examine both parents' lives and observe the interpersonal interactions that may inform a court's understanding of a complex case. *Id.* But the Idaho Rules of Family Law Procedure permit an evaluator to be selected only upon the parties' stipulation or by court appointment. *Id.* at 726, 451 P.3d at 439 (interpreting former I.R.F.L.P. 719, now I.R.F.L.P. 1004).

This Court emphasized that a parenting time evaluator receives "a wide grant of authority in performing their functions, e.g., complete access to both parties without counsel present." *Id.* That access may be called into question, however, when one party retains the evaluator specifically to form "an opinion regarding alleged misconduct by the other party." *Id.* Although the record in *Kelly* contained some evidence supporting the custody decision, this Court determined that the evidence could not be separated from the expert's testimony and recommendations. *Id.* Consequently, the award of sole legal custody and primary physical custody was vacated, and the matter was remanded for a new trial. *Id.* at 727, 451 P.3d at 440.

Unlike the expert in *Kelly*, who was retained by one party as an expert witness and financially compensated by that party, Hoffman was appointed by the magistrate court as a neutral evaluator and was compensated equally by both Devai and Burk. Although Burk initially suggested Hoffman to the court in his motion, proposing a candidate for appointment differs from hiring a party's own expert. A party's ability to "submit nominations" is contemplated under Idaho Rule of Evidence 706(a) and Idaho Rule of Family Law Procedure 1004(c).

Because the magistrate court appointed a neutral evaluator, Hoffman's appointment as the evaluator complied with Rule 1004(c) of the Idaho Rules of Family Law Procedure and Rule 706(a) of the Rules of Evidence.

*2. The parenting time evaluator complied with Rule 1004 of the Idaho Rules of Family Law Procedure.*

Devai emphasizes that Dr. Edwards, whom she considers more qualified than Hoffman, identified areas of concern in the evaluation. However, the evaluation fulfilled all requirements imposed by Idaho Rule of Family Law Procedure 1004.

At a minimum, every parenting time evaluation must provide a clear written explanation of the evaluation's process and purpose. I.R.F.L.P. 1004(f)(1)(A). That explanation must describe the procedures used and the time required for gathering and assessing information and, if psychological tests are administered, must clarify how the results will be used to confirm or question other information or prior conclusions. I.R.F.L.P. 1004(f)(1)(B). It must also describe the scope and distribution of the report, the confidentiality limits, and the responsibility for costs and payment. I.R.F.L.P. 1004(f)(1)(C)–(E).

Every evaluation must also include "[d]ata collection and analysis sufficient to allow the evaluator to observe and consider each party" comparably and to substantiate the evaluator's interpretations and conclusions, drawing on multiple sources where possible. I.R.F.L.P. 1004(f)(2). The evaluator must assess the "child's developmental needs; the quality of attachment to each parent and" their "social environment; and reactions to the separation, divorce, or parental conflict." *Id.*

Hoffman's report satisfied these requirements. It contained her written explanation of the evaluation's process, methods, procedures, scope, and limits of confidentiality, as Rule 1004(f)(1) requires. Consistent with the data collection and analysis required by Rule 1004(f)(2), Hoffman conducted intake questionnaires, individual intake appointments by Zoom, follow-up interviews, home visits, and parent-child-family observations. And the report addressed the seven best-interest factors set forth in Idaho Code section 32-717(1).

Devai's own expert acknowledged that Hoffman's report satisfied the requirements of Rule 1004(f). Dr. Edwards described Hoffman as "an experienced and competent professional" and affirmed that her report "in no way comments negatively on her excellent professional skills and abilities or well-respected professional reputation." Dr. Edwards concluded that "Hoffman is a reputable and competent professional who provided a thorough [p]arenting [t]ime [e]valuation that was largely compliant with applicable laws and rules."

Dr. Edwards acknowledged that "[t]here is no such thing as a 'perfect'" evaluation and that "professionals will disagree as to some nuances of procedure." Her concerns regarding the

"reliability and validity of the conclusions" were based on what she considered an insufficient examination of the evidence. Dr. Edwards recommended that "[i]t would be helpful for the court to hear evidence of the issues identified in this report so that the court can make its own determination as to the weight to give to Ms. Hoffman's conclusions." The magistrate court adopted this recommendation: it accepted Dr. Edwards as an expert, admitted her report, and heard her testimony regarding "her areas of concern, which largely matched those in her report." The court found Dr. Edwards to be a competent and reliable professional, respected her opinion, noted her concerns, and followed the process she suggested. The court considered "all of the areas of concern referenced in testimony and in the report . . . ," heard testimony on those issues and made its own determinations.

In short, the parenting time evaluation followed Rule 1004 in form and substance. Even Dr. Edwards considered it largely compliant; her concerns focused on its weight, not its compliance with Rule 1004. Next, we address that question.

3. *The magistrate court reached its decision through a reasoned analysis in the weight it assigned to the evaluation.*

Weighing an expert's critique against the evaluator's report is a matter of judicial discretion, and this Court does not reweigh evidence or substitute its judgment for the trial court's credibility determinations. *See Stephens v. Buell*, 175 Idaho 574, ___, 568 P.3d 471, 482–83 (2025). The magistrate court provided five reasons for assigning reduced weight to Dr. Edwards' report and testimony and greater weight to Hoffman's parenting time evaluation, each of which is supported by the record.

First, Devai did not give the magistrate court an opportunity to test her primary allegation, which challenged the parenting time evaluator's credibility. A court-ordered evaluation is admissible subject to cross-examination of the evaluator, under Idaho Rule of Family Law Procedure 1004(g). However, Devai did not call Hoffman as a witness. As the court observed, Hoffman was not called as a witness or "questioned about the alleged areas of concern." Without Hoffman's testimony, the court could not assess her response to Devai's allegation that Hoffman did not contact or omitted Devai's collateral contacts who would have supported her abuse allegations against Burk.

Second, any gap the alleged omission created was remedied at trial. The primary individual Devai maintains was omitted as a collateral contact was Devai's own mother, Ms. Devaine, who

testified at the trial. The court heard that evidence as the corrective measure Dr. Edwards had recommended. The court explained that it

> was able to hear from Ms. Devaine, the primary omitted collateral contact, and thus was able to assess this allegedly missing information and to determine the credibility of that information . . . . Thus, any missing information was remedied at trial. The court specifically finds nothing in Ms. Devaine's subsequent testimony changed this court's opinion of the contents and conclusions in the [parenting time evaluation].

Moreover, neither party asked the court to order Hoffman to update the evaluation in response to Dr. Edwards' report, even though Dr. Edwards' report was dated April 1, 2024, and the trial did not conclude until July 9, 2025, which left ample time for such a request.

Third, Hoffman was not required to run down every lead. The 2022 AFCC Guidelines for Parenting Plan Evaluations that govern parenting time evaluators direct evaluators to "limit their activities and contacts to the minimum necessary to meet the goal of gathering sufficient reliable information to address the purpose of the evaluation." Guidelines for Parenting Plan Evaluations in Family Law Cases § 6.2(b) (Ass'n of Fam. & Conciliation Courts 2022), available at https://www.afccnet.org/Resource-Center/Practice-Guidelines. As the magistrate court explained, limiting activities and contacts is done to help keep the associated costs down for the parents. Dr. Edwards' report, the court further explained, would have required Hoffman to "track down every lead, interview every person, look behind every report, independently investigate every [CFS] conclusion," which "is not this court's understanding of the guidelines or the role of the [parenting time] evaluator." The magistrate court's understanding is consistent with this Court's recognition in *Kelly* that a parenting time evaluator performs a "judicial function" within the parameters set by Rule 1004. *See* 165 Idaho at 725, 451 P.3d at 438.

Fourth, the parenting time evaluation was comprehensive, and requiring additional detail would be impractical. The materials reviewed by Hoffman included exhibits, documents, pictures, reports, and videos. The court explained that "it would have been impossible to properly reference every nuance of every item provided in a written evaluation. . . . Ms. Hoffman's report is 49 pages long (not including the 10 pages listing information reviewed), single spaced in small font." The court also emphasized that it would be infeasible to impose an extraordinary financial burden on the parties for the evaluator to follow all of Dr. Edwards' recommendations.

Fifth, the magistrate court did not rely *solely* on the parenting time evaluation to modify custody. The court found that "the conclusions of the PTE mirror those in the various reports of

investigation by [IDHW], not due to bias but due to a consistent and rational evaluation of the proven facts." Three IDHW investigations and the GAL reached consistent conclusions. The GAL made recommendations similar to those in the parenting time evaluation.

The court also had specific reasons to discount Dr. Edwards' critique of the parenting time evaluation. The court reasoned that "Dr. Edwards' concerns seem to be swayed by the one-sided version of information from Ms. Devai," observing that "Dr. Edwards did not interview Mr. Burk," "did not solicit or receive information from Mr. Burk," and lacked access to Hoffman's work product and file. Dr. Edwards conceded that her review was "limited to reviewing the [p]arenting [t]ime [e]valuation conducted by Ms. Hoffman," that she did not interview the parties, the child, or any collateral contacts, that she was "not making any comment or drawing any conclusions about what may or may not be an appropriate custody schedule in this case," and that she "did not independently review the evidence in this case."

These reasons dispose of Devai's two specific complaints. Her contention that Hoffman's report is faulty because it omitted Devai's collateral contacts fails for the reasons already explained: Devai did not call Hoffman as a witness to explain the omission or introduce the underlying email communications from Hoffman to the collateral contacts; Devai's mother, the primary omitted contact, testified without changing the court's view of the evaluation; and neither party requested an updated evaluation. Moreover, the evaluation itself explained that "[s]everal of [Devai's] listed contacts were professional providers" for whom releases of information were sent and that "[e]mail addresses for her personal contacts were not provided by the completion of this report."

Devai's remaining contention, that Dr. Edwards identified "multiple pieces of evidence that would support a hypothesis that domestic violence was perpetrated" and Hoffman failed to address it, is unpersuasive. The magistrate court reviewed each problem with the evaluation Dr. Edwards listed and still found that "[t]rial evidence has demonstrated that the allegations of domestic violence are substantially unproven and thus the concerns raised by Dr. Edwards are of less weight." The court addressed the photographs of bruising; the damage to the coffee table, door, and the suitcase; the Texas protection order; and Devai's cell phone video recordings, explaining why none of them established domestic violence under Idaho Code section 39-6303. As discussed above, those findings rest on substantial and competent evidence.

In summary, the magistrate court appointed a neutral evaluator whose evaluation complied with Rule 1004 of the Idaho Rules of Family Law Procedure, and the court assigned greater weight to the evaluation by the neutral evaluator based on a reasoned analysis. The weighing of evidence is a discretionary call that is within the province of a trial court to make. Therefore, the magistrate court did not abuse its discretion in relying on the parenting time evaluation.

## V. CONCLUSION

We affirm the magistrate court's judgment in all respects. As the prevailing party, Burk is awarded costs as a matter of course pursuant to Idaho Appellate Rule 40(a).

Chief Justice BEVAN, and Justices BRODY, MOELLER and ZAHN CONCUR.